SUSAN H. GRAHAM, EX. *vs.* WALTER C. NYE *et al.*

JUNE 29, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Elevators. Negligence.*

Gen. Laws, cap. 129, § 16, providing that every passenger elevator shall be fitted with some suitable device to prevent the elevator car from being started until the door opening into the shaft is closed, covers not only the case of a moving elevator and the starting of the car before entrance or exit is accomplished but also requires that the door cannot be opened from the outside when the elevator is at rest.

*(2) Negligence. Elevators. Pleading.*

In a statutory action to recover for death of intestate through walking into an open elevator well, the declaration charged a violation of the duty imposed by Gen. Laws, cap. 129, § 16, which provides that every passenger elevator shall be fitted with some suitable device to prevent the car from being started until the door or doors opening into the shaft are closed, and that as a consequence the operator moved the car while the door opening into the shaft on one of the floors was open and deceased walked through the open door, the leaving of the door open was the proximate cause of the accident; the violation of the statutory obligation was continuous and the allegation to this effect in the declaration properly stated a cause of action.

*(3) Negligence. Elevators. Evidence.*

In a statutory action to recover for death of intestate through walking into an open elevator well, where the declaration charged a violation of the duty imposed by Gen. Laws, cap 129, § 16, evidence showing the lack of safety device prior to the accident was properly admitted, as the situation then was the same as at the time of the accident and continued unchanged.

STATUTORY ACTION to recover for death. Heard on exceptions of both parties and all overruled.

STEARNS, J. This is a statutory action to recover damages for the death of one William F. Graham, on November 11, 1919, caused by the alleged negligence of defendants, trustees and owners of the Imperial Apartments, in the city of Providence.

The declaration alleges a violation by defendants of the duty imposed upon them by Chapter 129, Section 16, General Laws, which provides that "every passenger elevator shall be fitted with some suitable device to prevent

the elevator car from being started until the door or doors opening into the elevator shaft are closed;" that as a consequence the operator of the elevator was enabled to and did move the elevator to one of the upper floors of the building while the door opening into the elevator shaft on the second floor was open; that the hallway on second floor was dark; that deceased, who was seventy-six years of age was lawfully on the premises, that his eyesight was defective and he was not familiar with the premises; that upon coming from the ground floor of the building to the second floor hallway by means of the stairway, deceased walked through said open doorway leading into the elevator shaft and fell to the botton thereof, receiving injuries from which he died on the same day.

The elevator was operated in a closed elevator shaft in the building which has six stories. In the hallway of each floor there was a sliding wooden door at the elevator entrance. The safety device on the elevator prevented the operation of the elevator whenever a door opening into the elevator shaft on any of the floors was open, with the exception of the door on the second floor. The apartment of the janitor of the building was on the second floor. The only entrance thereto was by a swinging door at the opening in the elevator shaft, and to leave this apartment and proceed to or from the hallway of the second floor, the occupant had to hold the elevator at the second floor and walk through the elevator to the hallway, the elevator on this floor being used apparently as a bridge from the hallway to this apartment. The janitor testified in regard to the elevator that "there was a safety device on the second floor but it was caught with a nail so it did not catch;" this was done designedly; the people living in the janitor's apartment had to have it that way, and this condition had existed for a considerable time—as long as the janitor had been there. There was a stairway running from the ground floor to the hallway on the second floor and thence to the hallways of the upper floors. The son of deceased occupied

a room on the third floor. He was ill and the deceased on the morning of November 11, came to Providence to call upon him. Repairs were being made on the first floor of the. building on this day and, according to the statement of the janitor, the elevator was not running to or from the first floor that day. The janitor and his wife shortly after 8 a. m. ran the elevator from the second floor to the upper floor and began cleaning the apartments as was their custom. Shortly after 9 o'clock the elevator was again at the second floor and the door opening into the elevator shaft on the second floor was open. Within ten or fifteen minutes thereafter the deceased was seen to enter the building, ascend the stairway and proceed toward the hallway in the direction of the stairway leading to the third floor which was near the entrance to the elevator. The hallway was dimly lighted with a single gas jet. The elevator at this time was at one of the upper stories. Deceased fell into the elevator well and was killed. The janitor testified that he was the only person who operated the elevator that day; that the tenants of the building usually left early and there was no occasion to use the elevator that morning except such use as he made of it in going to the different floors to clean them; that he made one or more trips in the elevator but could not say at what hours; that he saw the elevator door open that morning on the second floor only when he used it and when the elevator was there. All of the hallway elevator doors except the door on the second story had iron keyholes and could be opened from the outside by the use of a key and could be opened only by the operator of the elevator from the inside when the elevator was at the floor level; but the second story door had an opening in the place of a keyhole and when closed could be opened easily from the outside by pushing a knife, pencil or stick through the opening.

The evidence is sufficient to warrant the conclusion that the door into the elevator shaft was open when deceased fell into the shaft; that the elevator was moved to an upper story while the door was open; and that deceased was

not guilty of contributory negligence. The jury gave a verdict for plaintiff for $5,000. The trial justice granted defendants' motion for a new trial unless plaintiff remitted all of the verdict in excess of $3,500. Plaintiff took exception to this action of the trial justice. Defendants excepted to the refusal to direct a verdict in their favor and for certain other reasons. The case is now in this court on the bills of exceptions of both plaintiff and defendants.

The defendants claim that the object of the statute is to prevent injury to persons, by elevator cars only when they are in *motion* and to prevent accidents when passengers are entering or leaving an elevator and to prevent the starting of the car before the entrance or exit is accomplished; that the statute does not require that doors leading into the shaft must be kept closed or be so equipped that they can not be opened from the outside when the elevator is not in motion but at rest, nor that elevator cars must be opposite the floor level of a shaft door when such door is open.

An unprotected elevator well or shaft in a building is a place of danger. In ascertaining the meaning of the act it is proper to consider the ordinary construction and use of elevators and the danger sought to be guarded against. One manifest danger is any unguarded opening into the elevator well. Section 15, Chapter 129, provides that any elevator running in a building where "the well of which elevator is not so protected as to be inaccessible from without while the elevator is moving" shall be equipped with an automatic warning signal device which shall give an automatic warning signal that the elevator is in motion on every floor of the building which the elevator approaches. Section 16 provides that all elevator openings through floors where there is no shaft shall be protected by sufficient railings, trapdoors or other mechanical devices equivalent thereto. Having thus provided for the protection of openings in the floors in buildings where there is no elevator shaft, provision is then made in regard to buildings where there is an elevator

shaft: "Every passenger elevator . . . shall be fitted with some suitable device to prevent the elevator car from being started until the door or doors opening into the elevator shaft are closed." If defendants' construction of the act is correct the elevator door on every floor of the building might lawfully be left open when the elevator was not running and all doors could remain open when it was running, with the exception of the door on the particular floor on the level of which the elevator was in motion. The need of protection from an opening in the floor is the same whether an elevator runs in a shaft or in a place which is not enclosed. If the protection of passengers while entering or leaving the elevator was the sole object of the act, it would have been necessary only to provide that the door on the level on which the elevator was at the time should be closed before the elevator could be started. But the act specifically provides that not only that door but *all* doors opening into the elevator shaft shall be closed before the elevator can be used. The safety device required by the statute must be so constructed that in order to operate the elevator at all, every door on the elevator shaft must be closed and kept closed. Additional protection of the openings into the elevator shaft is thus provided by reason of the fact that the lawful use of the elevator is only possible when all doors are closed. No particular locking device is required but the intent of the act is that all of the doors must be closed before the elevator is moved. The doors must be secured or at least latched in such manner that they can not conveniently and easily be opened by any person on the outside. In *Weeks* v. *Fletcher*, 29 R. I. 112 and in *Baynes* v. *Billings*, 30 R. I. 53, it was held that the provisions of this act were for the benefit of all persons, whether in or out of the elevator who are upon the landlord's premises, as employees, or by his invitation and that if the neglect of any of its provisions cause damage to such person without his fault, the act gives a right of action therefor.

The present case is quite different from *Hope* v. *Longley*, 27 R. I. 579, to which our attention is called by the defendants. In the *Longley* case it appears that the plaintiff, who had previously been employed to make repairs on the elevator when needed, was familiar with the premises; he knew that the elevator was in the habit of creeping, that it could have crept while the door was closed. Plaintiff walked into the elevator pit, through the door on the ground floor which was open, the elevator at the time being at the top of the building. The accident happened in the early morning. This door had been closed and locked the night before by the person who had last used the elevator and there was no evidence that any employee of defendant opened the door after it had been locked the night before. It was held that a nonsuit was properly granted on the ground that defendant was not guilty of any negligence in not keeping a servant at the elevator during the night to see that the door (2) was kept closed. In the case at bar the leaving of the door open was the proximate cause of the accident. The negligence complained of was the violation of an obligation imposed by statute. The negligence was continuous; the allegation to this effect in the declaration properly stated a cause of action. Defendants' exception to the form of the declaration is overruled. There was no error in the admission of evidence showing the lack of a safety device on the door of the second floor prior to the accident, as the situation then was the same as at the time of the accident and continued unchanged. Moreover, the janitor in his deposition already had testified without objection to the (3) same effect. The only other objection which requires mention is in regard to the reduction of the amount of the damages. This question was carefully considered by the trial justice and the reasons for his decision on this question appear in his rescript. We agree with the conclusion reached by him and plaintiff's exception to this action of the justice is overruled.

All of the exceptions of the plaintiff and the defendant are overruled. The case is remitted to the Superior Court for a new trial unless the plaintiff on or before July 8, 1922, shall file in the Superior Court her remittitur of all of said verdict in excess of $3,500. In case the plaintiff shall duly file such remittitur the Superior Court is directed to enter its judgment for the plaintiff for $3,500.

*Percy W. Gardner, Pirce & Sherwood,* for plaintiff. *Sidney Clifford,* of counsel.

*Alfred G. Chaffee,* for defendant.